IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

**BRENT A. JACKSON & ASSOCIATES, P.C.,**
Plaintiff,

v.  Civil Action No. 3:26cv03

**VIRGINIA B. HOWERTON,**

**Serve At:**

Sunrise at Silver Spring
11621 New Hampshire Avenue
Silver Spring, Maryland 20904
Defendant

## COMPLAINT

Plaintiff, Brent A. Jackson & Associates, P.C. ("Plaintiff" or "the Firm"), by counsel, alleges as follows:

### I. PARTIES

1. Plaintiff is a Virginia professional corporation with its principal place of business located in Chesterfield County, Virginia, and at all times relevant to this action has been duly organized and authorized to practice law in the Commonwealth of Virginia.

2. Defendant, Virginia B. Howerton ("Defendant" or "Mrs. Howerton"), is an adult resident and citizen of the State of Maryland who resides and/or has resided at Sunrise at Silver Spring, 11621 New Hampshire Avenue, Silver Spring, Maryland 20904, and at her permanent residence located at 429 Warrenton Drive, Silver Spring, Maryland 20904.

## II. JURISDICTION

3. This Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between Plaintiff and Defendant, in that Plaintiff is a citizen of Virginia and Defendant is a citizen of Maryland, and because the amount in controversy, exclusive of interest, fees, and costs, is Twelve Million Dollars ($12,000,000.00), which far exceeds the jurisdictional minimum of $75,000.00.

## III. VENUE

4. Venue is proper in the Eastern District of Virginia, Richmond Division, pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to the claims occurred in this District, including the negotiation and execution of the parties' engagement agreements and the substantial performance of legal services by Plaintiff in Richmond, Virginia, and because the operative written agreement between the parties expressly designates the United States District Court for the Eastern District of Virginia, Richmond Division, as a proper and agreed forum.

5. Defendant has expressly and irrevocably submitted to the jurisdiction of this Court by virtue of the governing law and venue provisions in the parties' final written agreement, in which she consented to the jurisdiction and venue of the United States District Court for the Eastern District of Virginia, Richmond Division, for any dispute arising out of or relating to the parties' relationship.

## IV. FACTUAL ALLEGATIONS

6. On or about October 28, 2018, Plaintiff and Defendant entered into a comprehensive Letter of Engagement that created an intensive, wide-ranging attorney–client relationship

under which Plaintiff agreed to provide legal, corporate, financial, business, and personal advisory services to Defendant, and Defendant agreed to compensate Plaintiff for such services pursuant to the terms of the engagement. **(See Exhibit 1)**

7. The 2018 Letter of Engagement contemplated that Plaintiff would not merely handle isolated matters but would serve as Defendant's primary legal and strategic advisor, maintaining frequent communication, providing high-level representation across multiple domains, and making itself available to Defendant on a near-daily basis for advice, planning, document drafting, negotiations, and coordination with third parties.

8. Following the execution of the 2018 Letter of Engagement, the parties' relationship continued without interruption through subsequent reaffirmations, modifications, and correspondence, reflecting the ongoing and evolving nature of the representation and confirming the parties' mutual intent that Plaintiff would provide long-term, full-service representation to Defendant over a broad spectrum of legal and business matters.

9. Over the years that followed, Plaintiff's representation of Defendant included the formation and organization of multiple corporate entities associated with Defendant's business plans and ventures, the preparation of governing documents and bylaws for those entities, the drafting of wills and estate-planning instruments for Defendant and her family, the preparation of medical directives, and the handling of complex real estate matters, including the review and coordination of architectural and development plans for properties connected to Defendant's objectives.

10. During the same period, Plaintiff provided Defendant with legal and strategic services that included negotiating transactions with domestic and international corporations,

working with governmental and quasi-governmental entities on emerging opportunities, advising on and coordinating activities connected to economic development in and around Petersburg, Virginia, engaging in board-level communications and negotiations involving historically Black colleges and universities, drafting and revising gift agreements and related philanthropic documents, coordinating tax-related compliance and strategy, and offering continuous guidance on the legal and structural implications of Defendant's extensive ambitions and projects.

11. As part of its efforts to advance Defendant's interests, Plaintiff, at Defendant's request and with her knowledge and agreement, engaged other attorneys, law firms, consultants, and professional specialists to work on Defendant's matters, thereby acting as a hub for complex, multi-party legal and strategic efforts that required substantial professional coordination, and Plaintiff did so in reliance on Defendant's repeated assurances that she possessed the financial capacity to compensate both Plaintiff and the subcontracted professionals.

12. Plaintiff, together with these subcontracted attorneys and other professionals, devoted thousands of hours to the planning, drafting, negotiation, and structuring of transactions, ventures, and initiatives that Defendant initiated, including extensive legal research, preparation of transactional documentation, review of financial and operational materials, coordination of due diligence, and participation in high-level negotiations with counterparties, all in reliance upon Defendant's representations that adequate funding was in place or imminently available to complete such matters.

13. On multiple occasions, despite the extensive professional work that had been performed and the advanced stage of negotiations or planning, transactions that Defendant had

represented as viable and fully funded collapsed because Defendant was unable to provide or secure the funding necessary to close the deals, thereby causing the abandonment of projects and leaving Plaintiff and its subcontracted professionals with unpaid time, effort, and invoices.

14. Defendant's repeated inability to fund the transactions she initiated caused Plaintiff to incur substantial unpaid obligations to subcontracted counsel and other professionals, and these failures in turn caused Plaintiff significant reputational harm, as it appeared to outside attorneys, consultants, and counterparties that Plaintiff's client either lacked the resources she claimed or was unwilling to honor her financial commitments, thereby giving Plaintiff what can fairly be described as a professional "black eye" in the eyes of those who expected the matters to close and the invoices to be paid.

15. Throughout the course of the representation, Defendant did not dispute that Plaintiff was providing substantial professional services on her behalf; rather, she repeatedly reassured Plaintiff that payment would be forthcoming and that delays were temporary and attributable to unique circumstances surrounding the source and processing of her funds.

16. Defendant represented to Plaintiff that the funds she intended to use to compensate the Firm for its extensive services were derived from a substantial medical malpractice settlement obtained in or around 2018, and she explained that this settlement involved multiple medical entities and at least three separate defendants or insurers, including at least one offshore insurance carrier whose involvement, she claimed, contributed to the complexity and timing of payment.

17. To reinforce her explanation and reassure Plaintiff, Defendant provided what she described as settlement documentation and correspondence from her attorneys, which she redacted before delivering to Plaintiff on the grounds that the settlement was subject to strict confidentiality provisions and contained sensitive personal and medical information that could not be disclosed in full.

18. Defendant repeatedly told Plaintiff that the settlement funds were under review or scrutiny by the Internal Revenue Service, by Wells Fargo Bank, and even by the Federal Reserve, and she claimed that these entities were engaged in a process to confirm that the funds were not "bad money," "dirty money," or proceeds of any illegal, fraudulent, or improper activity and that until such review was concluded, the funds could not be fully released or transferred.

19. Out of respect for Defendant's explanations and in reliance on the apparent authenticity of the documents she provided (Redacted Settlement Document from her medical malpractice), Plaintiff allowed significant time to pass while waiting for the alleged regulatory reviews and banking approvals to be completed, believing that the delays were external to Defendant and that, once resolved, Defendant would promptly satisfy the Firm's earned fees and the related obligations to subcontracted professionals.

20. Over a span of several years, Defendant repeatedly provided Plaintiff with specific dates and time frames by which she claimed the funds would be released and payment would be made, and Plaintiff reasonably relied on these assurances in continuing to represent Defendant and in refraining from immediately pursuing formal collection measures; however, Defendant failed to honor any of these promised dates, which numbered in excess of one hundred separate assurances.

21. At no point did Defendant provide Plaintiff with unrestricted, verifiable documentation from a bank, regulator, or settlement administrator confirming that a hold or review was actually being conducted, and she refused to grant Plaintiff authority to contact Wells Fargo or any other financial institution or regulatory body directly to confirm the existence or status of the alleged investigation or delay.

22. As the years passed and Defendant's explanations became increasingly repetitive, inconsistent, and implausible, Plaintiff reasonably concluded that Defendant either did not have the settlement funds she described or had no genuine intention of using those funds to pay the Firm's acknowledged and longstanding fees and obligations.

23. On or about August 25, 2025, Plaintiff sent Defendant a detailed written communication summarizing the long history of the representation and confirming that, as of that date, Defendant owed Plaintiff Twelve Million Dollars ($12,000,000.00) for services rendered, and Plaintiff further advised Defendant that this amount reflected years of extensive professional work and that the balance remained due and owing. **See Exhibit 2**

24. Defendant did not dispute the amount stated in that written communication, and shortly thereafter, the parties executed a Final Agreement that expressly acknowledged the total indebtedness of Twelve Million Dollars ($12,000,000.00) as compensation for services rendered from 2018 through August 2025, and that further confirmed that the debt was liquidated, due, and undisputed, and not subject to offset, counterclaim, or defense. **See Exhibit 3.**

25. In that Final Agreement, Defendant affirmed that she had full mental and legal capacity, that she entered into the agreement freely and voluntarily, that she had the opportunity to

have the agreement reviewed by independent counsel, and that she agreed the Firm's fees were fair and reasonable in light of the complexity, scope, and duration of the services provided.

26. Defendant has nonetheless failed and refused to pay the Twelve Million Dollars ($12,000,000.00) acknowledged in the Final Agreement, and despite repeated demands and the passage of significant time, she has not satisfied her obligations to Plaintiff.

## V. CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

27. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 26 of this Complaint as if fully restated herein.

28. The 2018 Letter of Engagement, the subsequent reaffirmations and modifications, and the Final Agreement executed in 2025 constitute valid, binding, and enforceable contracts between Plaintiff and Defendant, supported by adequate consideration and entered into with full knowledge and consent.

29. Plaintiff fully performed its contractual obligations by providing extensive legal, corporate, strategic, and advisory services to Defendant over the course of many years, by coordinating and managing substantial professional work performed by subcontracted attorneys and consultants, and by continuing to act in reliance on Defendant's repeated assurances that payment would be made once the purported constraints on her funds were lifted.

30. Defendant has materially breached these contracts by failing and refusing to pay the Twelve Million Dollars ($12,000,000.00) that she expressly acknowledged as liquidated,

due, and undisputed, and by failing to satisfy the associated obligations that arose from the parties' long-term engagement.

31. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered damages in the principal amount of Twelve Million Dollars ($12,000,000.00), together with additional consequential losses, including unpaid subcontractor invoices, reputational harm, and other financial injury, for which Plaintiff is entitled to recover from Defendant.

## COUNT II – QUANTUM MERUIT / UNJUST ENRICHMENT
## (IN THE ALTERNATIVE)

32. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 31 of this Complaint as if fully restated herein.

33. In the alternative to its contract claim, Plaintiff alleges that it rendered extensive and valuable professional services to Defendant at her request and with her knowledge and full awareness of the nature, scope, and intensity of those services, and that those services conferred substantial benefits upon Defendant in the form of legal work, strategic planning, corporate structuring, document preparation, negotiations, and coordination with third parties.

34. Defendant knowingly accepted the benefits of Plaintiff's services and of the services of subcontracted professionals organized and supervised by Plaintiff, and she has failed to pay for those services despite having repeatedly acknowledged the debt and her obligation to satisfy the fees owed.

35. Under principles of equity and good conscience, Defendant should not be permitted to retain the benefits of Plaintiff's labor and expertise without paying the reasonable value of those services, and Plaintiff is entitled to recover the fair and reasonable value of the services rendered, which value is in excess of Twelve Million Dollars ($12,000,000.00).

## IV. DAMAGES AND PRAYER FOR RELIEF

36. As a result of Defendant's conduct as described in this Count I of the Complaint, Plaintiff has suffered and continues to suffer damages in the principal amount of Twelve Million Dollars ($12,000,000.00), plus pre-judgment interest, post-judgment interest, attorney's fees when permitted by contract or law, unpaid subcontractor and consultant obligations, reputational harm, and other consequential and incidental losses.

37. Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant in the amount of Twelve Million Dollars ($12,000,000.00) in Count II, award pre-judgment and post-judgment interest as allowed by law, award Plaintiff its reasonable attorney's fees and costs incurred in bringing this action as permitted by the parties' agreements and applicable law, and grant such other and further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted
Brent A. Jackson & Associates, P.C.

_____/S_/_____
By Counsel

Brent A. Jackson, Esq. #22588
Brent A. Jackson & Associates, P.C.
P.O. Box 25670
Richmond, Virginia 23260
Tel. 804-726-6601

Fax – 804-726-2999
Brent.jacksonlawgrp@gmail.com

Thomas L. Johnson, Jr., #38814
Bricker, Anderson and Johnson, P.C.
411 E. Franklin Street, Suite 504
Richmond, Virginia 23219
Tele.  804-649-2304
Johnson@bajinjurylaw.com